# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE                                    NEWS RELEASE #023

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **5th day of May, 2015**, are as follows:

**PER CURIAM**:

2014-B -2544        IN RE: REJOHNNA BROWN-MITCHELL   (Disciplinary Board)

Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, the brief filed by the ODC, and oral argument, it is ordered that ReJohnna Brown-Mitchell, Louisiana Bar Roll number 17487, be and she hereby is disbarred.  Her name shall be stricken from the roll of attorneys and her license to practice law in the State of Louisiana shall be revoked.  It is further ordered that respondent shall make restitution as set forth in this opinion. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.

CRICHTON, J., concurs in part and dissents in part and assigns reasons.

SUPREME COURT OF LOUISIANA

NO. 2014-B-2544

IN RE: REJOHNNA BROWN-MITCHELL

ATTORNEY DISCIPLINARY PROCEEDING

PER CURIAM

This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel ("ODC") against respondent, ReJohnna Brown-Mitchell, an attorney licensed to practice law in Louisiana, but currently ineligible to practice.

**UNDERLYING FACTS**

*The McDonald Matter*

Triscelyn McDonald retained respondent to represent her in obtaining a divorce, securing child support, and assist in forestalling the loss of the couple's home and vehicles to creditors. On January 28, 2008, the judge ordered Ms. McDonald's husband, Peyton McDonald, to pay $20,000 to Omni Bank to avoid foreclosure on the community home and vehicles. Mr. McDonald did not make that payment. However, on April 21, 2008, he appeared in court and paid $7,000 in cash to respondent. The judge directed respondent to place the $7,000 in her client trust account and to immediately turn the funds over to Omni Bank the next day.

On April 22, 2008, Mr. McDonald filed for Chapter 13 bankruptcy, and an automatic stay was issued. The next day, Ms. McDonald, through respondent, moved to have the $7,000 applied to Mr. McDonald's past due child support

obligation. The judge denied the motion and ordered respondent to forward the $7,000 to the Chapter 13 bankruptcy trustee. Respondent did not do so.

On May 8, 2008, in open court, the judge again ordered respondent to forward the $7,000 to the Chapter 13 bankruptcy trustee. Respondent did not do so.

On May 23, 2008, in written reasons for judgment, the judge again ordered respondent to immediately forward the $7,000 to the Chapter 13 bankruptcy trustee. Respondent did not do so.

In a written judgment signed June 13, 2008, the judge ordered respondent to deposit the $7,000 into the registry of the court. Respondent did not do so.

Mr. McDonald's bankruptcy petition was dismissed on July 14, 2008. That same day, respondent sent Ms. McDonald a letter regarding the $7,000, stating that "within 30 days of this letter I will proceed to seize these funds in my possession for the payment of Attorney fees and expenses." On August 18, 2008, respondent withdrew the $7,000 from her trust account for her own use.

The ODC alleged that respondent's conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.7(a)(2) (conflict of interest: current clients), 1.15(d) (failure to timely remit funds to a client or third person), 3.4(c) (knowing disobedience of an obligation under the rules of a tribunal), 8.4(b) (commission of a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer), 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), and 8.4(d) (engaging in conduct prejudicial to the administration of justice).

*The White Matter*

Deborah White hired respondent in a property transfer matter involving property located at 323 & 325 Pacific Avenue in Algiers (hereinafter referred to as

2

the "Algiers double"). Respondent prepared, notarized, and recorded an act of donation, executed on March 14, 2005, whereby Velma Price, Ms. White's stepdaughter, donated her interest in the Algiers double to Ms. White.

Ms. White was living and working in another part of the New Orleans area and could not afford to pay for the necessary repairs to the Algiers double. As such, Ms. White and respondent entered into a business arrangement whereby respondent would live in one half of the property and rent out the other half to pay for the repairs. Respondent did not advise Ms. White in writing to obtain independent legal counsel before entering into the business arrangement, nor did respondent obtain any written informed consent from Ms. White.

Following Hurricane Katrina, Ms. White moved to Texas. In early 2007, respondent advised Ms. White that respondent could get an SBA loan to complete the renovations on the Algiers double. Respondent also advised Ms. White that, in order for the SBA loan to be approved, Ms. White would need to sign a quitclaim deed to temporarily transfer title to respondent. Respondent prepared the quitclaim deed transferring Ms. White's interest in the Algiers double to respondent. The quitclaim deed was signed and notarized on February 12, 2007. Respondent did not advise Ms. White in writing to obtain independent legal counsel before transferring the property, nor did respondent obtain any written informed consent from Ms. White. Respondent has refused to return Ms. White's interest in the Algiers double after obtaining same by making misrepresentations and without compensating Ms. White.

The ODC alleged that respondent's conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.4 (failure to communicate with a client), 1.7(a)(2), 1.8(a) (a lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security, or other pecuniary interest adverse to a client), and 8.4(c).

3

*The Phillips Matter*

Tania Phillips hired respondent to represent her in an insurance coverage dispute against State Farm Insurance Company. Ms. Phillips paid respondent a $1,500 advanced fee. In early 2011, Ms. Phillips became dissatisfied with respondent's representation and obtained a new attorney, Ginger DeForest. Ms. DeForest made attempts to obtain from respondent an accounting of the earned portion of the $1,500 fee, a refund of the unearned portion, and Ms. Phillips' file. Her attempts were unsuccessful.

In late July 2011, Ms. DeForest had a subpoena duces tecum issued in Ms. Phillips' case, which subpoena required respondent to produce Ms. Phillips' file. Respondent still failed to produce the file. In late September 2011, Ms. DeForest filed a motion to hold respondent in contempt of court. Respondent avoided being served with the motion and still failed to produce Ms. Phillips' file.

Between September 9, 2011 and March 22, 2012, respondent was ineligible to practice law for failing to pay her bar dues and the disciplinary assessment and failing to file her registration statement and her trust account disclosure statement. Since June 1, 2012, respondent has been ineligible to practice law for failing to comply with mandatory continuing legal education ("MCLE") requirements.[1]

In October 2011, State Farm's attorney, Harry Terhoeve, filed a disciplinary complaint against respondent to report the filing of the motion for contempt against her. In March 2012, respondent responded to the complaint but did not address the substance or merits of the complaint. Respondent also failed to appear for a scheduled sworn statement regarding the complaint in March 2012.

---

[1] Respondent is also ineligible for failure to pay her bar dues and the disciplinary assessment, and for failure to file a trust account registration statement.

The ODC alleged that respondent's conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.1(b) (failure to comply with MCLE requirements), 1.1(c) (failure to pay bar dues and the disciplinary assessment), 1.5(f)(5) (failure to refund an unearned fee), 1.16(d) (obligations upon termination of the representation), 3.4(a) (unlawful obstruction of another party's access to evidence), 3.4(c), 8.1(b) (knowing failure to respond to a lawful demand for information from a disciplinary authority), 8.1(c) (failure to cooperate with the ODC in its investigation), and 8.4(d). The ODC also alleged that respondent's conduct violated Supreme Court Rule XIX, § 8(A) (every lawyer admitted to practice before the court shall pay to the attorney disciplinary board an annual fee to be set periodically by the court) and § 8(C) (each lawyer required by this rule to pay an annual fee shall file with the Louisiana State Bar Association a registration statement on a form approved by the court).

## DISCIPLINARY PROCEEDINGS

In July 2012, the ODC filed formal charges against respondent. Initially, respondent failed to answer the charges, and the factual allegations contained therein were deemed admitted and proven by clear and convincing evidence pursuant to Supreme Court Rule XIX, § 11(E)(3). At that time, no formal hearing was held, but the parties were given an opportunity to file with the hearing committee written arguments and documentary evidence on the issue of sanctions. Respondent filed nothing for the committee's consideration.

After considering the deemed admitted matter, the committee recommended respondent be suspended from the practice of law for three years. The ODC objected to the committee's report and recommendation, arguing that disbarment was the appropriate sanction. The matter was then set for oral argument before a panel of the disciplinary board. Respondent appeared for oral argument and

5

submitted a motion to recall the deemed admitted order. After respondent produced her medical records indicating she suffered an episode of major depression for which she sought treatment from September 2011 through April 2012, the board chair granted her motion to recall the deemed admitted order and remanded the matter for a formal hearing on the merits.

*Formal Hearing*

The hearing committee conducted the hearing on January 15, 2014. Respondent did not appear and was not represented by counsel. The ODC introduced documentary evidence, including transcripts of respondent's sworn statements given on November 4, 2010 and May 17, 2011, and called witnesses to testify before the committee.

With respect to the McDonald Matter, Ms. McDonald testified that she filed a disciplinary complaint against respondent because the $7,000 was never paid to Omni Bank, and the foreclosure proceeded. She also indicated that she personally paid respondent approximately $3,500 for the representation. Initially, she paid a $1,200 fee plus the court costs. Then she paid respondent each time respondent appeared in court on her behalf. Ms. McDonald also testified that her divorce is still not final, and she and her husband have a huge deficiency judgment against them because of the foreclosure on their house and repossession of their vehicles.

With respect to the White matter, attorney Miles Trapolin testified that he performed title research on the Algiers double for Ms. White, which research revealed that there was no SBA loan connected to the property. Ms. White testified that respondent was the one who suggested Ms. Price transfer her interest in the Algiers double to Ms. White. She also testified that respondent prepared the donation papers. When Ms. White told respondent she did not have any money to pay respondent's fee or to make repairs to the property, respondent proposed that

she use her own money to repair the property in exchange for living in one half of the property and being able to keep the rent collected for the other half as her attorney's fee. Regarding the SBA loan, Ms. White testified that respondent wanted the loan to recoup the money she had spent on repairs. Respondent told Ms. White that, in order to get the loan, Ms. White needed to sign the quitclaim deed. Respondent did not explain to Ms. White that signing the quitclaim deed would give respondent Ms. White's interest in the Algiers double. Respondent also did not inform Ms. White to seek the advice of independent counsel.

With respect to the Phillips matter, Ms. Phillips testified that she hired Ms. DeForest when she became dissatisfied with respondent's representation. She became dissatisfied because respondent was not appearing in court on her behalf for scheduled hearings, and she could not contact respondent. Neither she nor Ms. DeForest could get respondent to provide them with the file, an accounting, or a refund. This delayed her case, and she had to pay Ms. DeForest an additional $1,500 to represent her. She also indicated that respondent ignored Ms. DeForest's attempts to get her to turn over the file through subpoenas and motions filed in Ms. Phillips' case, which increased the costs in the case. Ms. Phillips further testified that she filed a claim with the Client Assistance Fund to get a refund of the fee she paid to respondent but has not yet received any money from that claim. Mr. Terhoeve testified that he filed the disciplinary complaint against respondent because of his duty as an attorney to report unethical behavior by another attorney. He also stated that respondent's failure to turn over Ms. Phillips' file delayed the case approximately six months because discovery could not be answered. It also increased State Farm's costs because of the motions Mr. Terhoeve had to file to get discovery responses. Ms. DeForest testified that respondent refused to cooperate with her or comply with court orders to turn over Ms. Phillips' file. She e-mailed and called respondent dozens of times. Respondent told her she would send the

file but never did. Ms. Phillips paid additional court costs because of the subpoena and motions Ms. DeForest filed to get respondent to turn over the file. Finally, Ms. DeForest indicated respondent never sent her an accounting of the fee Ms. Phillips paid her.

Because respondent failed to participate in the hearing, she did not introduce documentary evidence, call witnesses to testify before the committee, or testify on her own behalf. However, on the morning of the hearing, respondent requested a continuance, claiming her mental health issues had prevented her from participating in the proceedings. She also indicated she had an appointment with a mental health provider that same day. The hearing committee chair denied respondent's request for a continuance but left the record open until February 18, 2014 to give respondent time to submit whatever documentary evidence, including medical information, she wished to present. The committee chair also gave respondent thirty days to request that she be allowed to appear before the committee to present live testimony. Just prior to the February 18, 2014 deadline, respondent submitted a motion for additional time to present her evidence, citing her mental, emotional, and physical inability to prepare her submissions. In response, the committee chair gave respondent until March 24, 2014 to present her evidence or to apply for disability inactive status. Respondent submitted nothing further for the committee's consideration and did not apply for disability inactive status.

*Hearing Committee Report*

After considering the evidence and testimony presented at the hearing, the hearing committee made the following factual findings:

The McDonald Matter – The $7,000 was intended to be paid to Omni Bank, which held the mortgage on the McDonalds' house, as a partial "good faith"

8

payment to forestall the bank from foreclosing on its mortgage. The judge, in a May 8, 2008 recap of the case history, stated that she ordered respondent to put the $7,000 in trust on April 21, 2008 and "immediately turn those funds over to Omni Bank the morning of April 22, 2008." Respondent placed the $7,000 into her trust account on April 22, 2008 but did not pay the money to Omni Bank. The transcript of the April 21, 2008 hearing indicated that the judge told Mr. McDonald: "You give the money to your attorney. He, in turn, will give the money to Ms. Mitchell. That's the only way that this is going to work. This money is going directly to Omni Bank." The transcript further indicates that the judge asked respondent whether she wished to leave with the money. She responded that she wanted to put it into the registry of the court. In her response to the disciplinary complaint, respondent stated, "There was no order from the Court for me to submit the amount of $7,000 tendered by Mr. McDonald to the Bank. This is another untruth claimed by Ms. McDonald."

On April 22, 2008, Mr. McDonald filed for Chapter 13 bankruptcy protection. Ms. McDonald, through respondent, filed a motion on April 23, 2008, seeking to have the $7,000 attributed to child support. The judge denied this motion and, on April 24, 2008, directed respondent to pay the money to the Chapter 13 trustee. Although respondent denies hearing or receiving this order, she nevertheless moved to reconsider it. The motion to reconsider was heard on April 30, 2008 and denied.

Respondent appeared in court on May 8, 2008 to request that the judge's previous order, that the $7,000 be paid to the bankruptcy trustee, be revoked and instead that the money be applied as child support. Her motion was denied. The judge's written judgment, signed on June 13, 2008, explicitly stated that, "It is further ordered, adjudged and decreed that Rejohnna Brown Mitchell shall deposit the $7,000 she received in open court from Payton McDonald into the registry of

9

the Civil District Court of Orleans Parish." Although respondent was in court, she denied ever having been made aware of such an order.

The transcript of the May 8, 2008 hearing indicates that Mr. McDonald's bankruptcy proceeding was still ongoing and that Ms. McDonald was still in possession of the family home. The judge told respondent:

> When we were in court I indicated that the $7,000.00 was to be paid to Omni Bank so that we could try to stop the foreclosure... As it was after hours and we could not place the money in the Registry of the Court, I advised you to take the money and place the money into your trust account, then immediately that next morning, provide the money to Omni Bank. In the interim Mr. McDonald went and filed a Petition for Bankruptcy... The $7,000.00 was to be paid to Omni bank. That was prior to Mr. McDonald filing his Petition for Bankruptcy. As such, that money belonged to the creditor; meaning, Omni Bank... The fact that he filed for bankruptcy after I made that ruling, and after the money had, in fact, been placed in your possession, that money is to be immediately turned over to the bankruptcy trustee; the full $7,000.00.

Respondent indicated she understood this order when she replied, "Okay." The judge continued, "I know that the bankruptcy trustee has called my division, and has asked why the money has not been sent over. So I'm just advising you right now that the bankruptcy trustee is, in fact, looking for the $7,000.00."

In connection with the motion heard on May 8, 2008, respondent sought an award of attorney's fees, and, post-hearing, she sent a statement to the court totaling those fees and costs at $6,350. In her judgment, the judge awarded respondent $500, plus $50 in costs.

Notwithstanding having been directed in open court and by written orders to pay the $7,000 variously to Omni Bank, then to the registry of the court, then to the Chapter 13 trustee, then again to the registry of the court, respondent nevertheless stated in her deposition that, "I have not at anytime been served with a copy of a judgment requiring me to place $7,000 in the registry of the court." She

acknowledged that she did not do so and asserted that the judge said the trustee would get in touch with her, which he did not do. The committee has found no such statement by the judge.

Despite having been in open court on May 8, 2008 and despite the entry of a written judgment on June 13, 2008, respondent testified that, by the time she got an order to turn the money over to the bankruptcy trustee, the bankruptcy had been dismissed. Respondent further testified that "Omni Bank was completely satisfied." But Ms. McDonald testified that there was a "huge" outstanding deficiency judgment against her.

Respondent cashed the $7,000 out of her trust account on August 18, 2008. She testified that, when she took the $7,000 out of her trust account, the money was "converted to attorney fees." Apparently, these fees included the $6,350 in fees and costs she claimed in connection with the May 8, 2008 hearing, for which the judge awarded $550.

Based on these facts, the committee determined respondent violated Rules 1.1(c), 1.4, 1.5(f)(5), 3.4(c), 8.4(b), 8.4(c), and 8.4(d) of the Rules of Professional Conduct in the McDonald matter.

The White Matter – On March 14, 2005, respondent notarized a conveyance of Velma Price's interest in the Algiers double to Deborah White. After that transfer, neither Ms. Price nor Ms. White was a full owner of the property. Other heirs were involved in the title, and there were city taxes owed. Respondent may or may not have been aware that, after the transfer, Ms. White was not the full owner of the Algiers double. Ms. White and respondent apparently struck a deal whereby respondent would occupy half of the Algiers double and use it as her law office address in exchange for doing maintenance and upkeep.

Ms. White testified that, on the pretext of satisfying an SBA loan requirement, respondent convinced her to quitclaim the property to respondent.

11

According to Ms. White, respondent said, "But I'm going to make sure, you know, your ownership is back on there, you know, through another Judge – I mean, through another lawyer, and we're going to make sure that the papers are right." This is what Ms. White agreed to. On February 12, 2007, Ms. White quitclaimed all her interest in the property to respondent.

Ms. White sought the assistance of attorney Miles Trapolin to regain title to the Algiers double. Ms. White also confronted respondent with what she considered respondent's trick to deprive her of her property. In response, respondent "got furious" with Ms. White, telling Ms. White to "just step back" and let respondent do what she was supposed to do because she was the lawyer. To Ms. White, that was respondent "letting me know, leave it alone, that she's going to work on it, she's getting everything together." However, then respondent told Ms. White she had no right to the Algiers double anymore because it now belonged to respondent and not Ms. White, which made Ms. White file a disciplinary complaint against respondent. In her complaint, Ms. White said that she sought out respondent for legal advice. However, respondent denies that she had an attorney-client relationship with Ms. White.

Based on these facts, the committee determined that respondent violated Rules 8.4(c) and 8.4(d) of the Rules of Professional Conduct in the White matter. However, the committee was unable to conclude by clear and convincing evidence that Ms. White was respondent's client and, thus, did not find a violation of Rules 1.4, 1.7, or 1.8.

The Phillips Matter – Ms. Phillips paid respondent a "retainer" of $1,500 to pursue her claim. Because court orders were served on Ms. Phillips, as well as on respondent, Ms. Phillips knew that respondent was not complying with discovery requests. According to Ms. Phillips, she finally decided to hire Ms. DeForest when she received a notice for a motion to dismiss her case. She sent respondent an e-

12

mail about the motion, and respondent "responded back with a very ugly email." So she hired Ms. DeForest and paid her another $1,500.

In April and July 2011, Ms. DeForest requested from respondent a copy of Ms. Phillips' file. They had one telephone conversation in which, according to Ms. DeForest, respondent promised to deliver the file but claimed it would be expensive to copy same. Ms. DeForest told respondent she would copy the file if respondent delivered it to her. Ms. DeForest then attempted to subpoena respondent for a records deposition but was unable to effect service of the subpoena upon respondent. On September 20, 2011, Ms. DeForest also filed a motion to hold respondent in contempt, along with a lengthy memorandum in support. Ms. DeForest sought $1,673.25 in attorney's fees for the efforts she had taken to obtain the file.

On December 1, 2011, respondent sent Ms. DeForest an e-mail indicating that a telephone call might be arranged between them but that e-mail was the best way to reach respondent. Ms. DeForest responded by e-mail on December 12, 2011, repeating that she wanted the file and advising that the contempt motion had been set for hearing on January 9, 2012. On January 10, 2012, Ms. DeForest e-mailed respondent, stating that she had been unable to effect service on respondent. She requested that respondent waive service and offered, if respondent did cooperate, to reset the hearing. If respondent would pay Ms. DeForest $1,500 for her time, Ms. DeForest offered to cancel the rule to show cause. On January 18, 2012, Ms. DeForest again e-mailed respondent, asking for a service address or a waiver. Respondent e-mailed back on January 23, 2012, stating, "This is my first day back in my office after an extended absence due to my illness. I will respond to all of your emails within a reasonable time. Thank you for your understanding." Ms. DeForest again e-mailed respondent on January 25, 2012, asking whether respondent would accept service or, in the alternative, pay Ms. DeForest $1,500 in

attorney's fees. Ms. DeForest e-mailed respondent again on January 31, 2012, demanding that respondent either accept service or face a disciplinary complaint and an arrest warrant.

On February 10, 2012, respondent e-mailed Ms. DeForest, stating that she had already sent Ms. DeForest the file "via email," which included "all of the communications and documents within my file." However, the committee found no evidence in the record of an e-mail attaching any file material. That same day, Ms. DeForest responded via e-mail that respondent could make her argument to the judge. She further indicated that she no longer needed the file from respondent because she recently obtained a copy from opposing counsel. She also stated that she "won the entire thing for Ms. Phillips on motions, which you should have filed years ago." Ms. Phillips was granted summary judgment on January 9, 2012. Notwithstanding the resolution of Ms. Phillips' claim against State Farm, the judge still expected Ms. DeForest to summon respondent to answer for the motion for contempt. To this end, Ms. DeForest moved to amend Ms. Phillips' petition to add respondent as an additional defendant so the case would continue despite the State Farm resolution. The motion was granted on March 5, 2012. On March 8, 2012, Ms. DeForest filed a motion to reset the contempt hearing, and the court reset it to May 7, 2012.

Ms. DeForest testified that it was obvious respondent did not have a file because Ms. Phillips did all the work on the case while respondent represented her. She also testified that respondent took a fee from Ms. Phillips and did no work for the fee. The committee likewise concluded that respondent did not actually possess any file materials regarding her representation of Ms. Phillips. On January 28, 2013, Ms. Phillips filed a $1,500 claim with the Client Assistance Fund.

Based on these facts, the committee determined that respondent violated Rules 1.1(b), 1.1(c), 1.5(f)(5), 1.16(d), 3.4(c), and 8.4(d) of the Rules of Professional Conduct in the Phillips matter.

The committee then considered the ABA's *Standards for Imposing Lawyer Sanctions* to determine that the baseline sanction ranges from suspension to disbarment. In aggravation, the committee found a dishonest or selfish motive, multiple offenses, vulnerability of the victim, and indifference to making restitution. The only mitigating factor the committee found was respondent's possible personal or emotional problems.

After further considering this court's prior jurisprudence addressing similar misconduct, a majority of the committee recommended that respondent be suspended from the practice of law for three years. One member of the committee, however, recommended that respondent be disbarred. The full committee further recommended the following:

1) Respondent shall make full restitution in the amount of $7,000 in the McDonald matter by placing same in the registry of the court where the McDonalds' divorce case was pending;

2) Respondent shall make full restitution in the amount of $1,500 to Ms. Phillips; and

3) In connection with any future application for reinstatement, respondent shall show what steps she has taken to restore all of Ms. White's interest in the Algiers double previously quitclaimed to respondent.

The ODC objected to the committee's report and recommendation, again arguing that disbarment was the appropriate sanction. Respondent did not file an objection to the committee's report and recommendation. However, the board received a letter from Dr. Mark Ladner of the Department of Veterans Affairs Mental Health Outpatient Clinic in Jackson, Mississippi, indicating that a doctor at

the clinic had been treating respondent for depression since January 2014. The letter also indicated that a doctor in the emergency department of the Jackson Veterans Affairs Medical Center had diagnosed respondent with "Depressive Disorder NOS" in December 2013. Finally, the letter indicated that respondent had been treated for depression by an outside physician for the previous two years.

*Disciplinary Board Recommendation*

After review, the disciplinary board determined that the hearing committee's factual findings are supported by the record and are not manifestly erroneous. Based on these facts, the board found the following rule violations:

The McDonald Matter – Respondent violated Rules 1.7(a)(2), 1.15(d), 3.4(c), 8.4(b), 8.4(c), and 8.4(d) of the Rules of Professional Conduct as alleged in the formal charges. Respondent violated Rule 1.7(a)(2) by putting her personal interest in collecting attorney's fees before her duties and responsibilities to her client and the judge's orders regarding the $7,000. She violated Rule 1.15(d) by failing to promptly deliver the $7,000 first to Omni Bank, then to the bankruptcy trustee, and finally to the registry of the court pursuant to the judge's numerous orders to do so. She violated Rule 3.4(c) by knowingly disobeying numerous court orders regarding the $7,000 in her possession. Finally, respondent violated Rules 8.4(b), 8.4(c), and 8.4(d) by failing to comply with court orders to relinquish the $7,000 and then converting the $7,000 to her own use as attorney's fees.

The White Matter – Respondent violated Rules 1.4, 1.7(a)(2), 1.8(a), and 8.4(c) of the Rules of Professional Conduct as alleged in the formal charges. Respondent violated Rule 1.4 by inducing her client, Ms. White, to enter into a business transaction under false pretenses. Furthermore, respondent did not inform Ms. White of the seriousness and possible consequences of entering into such a transaction or advise Ms. White of her right (and need) to seek the advice of

16

independent counsel. She violated Rule 1.7(a)(2) by using her knowledge and skill as an attorney to gain an unfair advantage over her client and ultimately "steal" her client's property interest because she was motivated more by her personal interest in her client's property than her duty to her client. She violated Rule 1.8(a) by entering into a business arrangement with her client, whereby she would live in one half of Ms. White's property and rent out the other half to pay for necessary repairs, without advising Ms. White to obtain independent legal counsel. Respondent subsequently induced Ms. White to sign a quitclaim deed transferring her ownership interest in the Algiers double to respondent under the false pretense that respondent was acquiring temporary ownership interest in the property for the express purpose of obtaining an SBA loan for repairs. Respondent did not advise Ms. White to obtain independent legal counsel before signing the quitclaim deed, which was executed in 2007, and respondent still possesses the ownership interest in the Algiers double. Finally, respondent violated Rule 8.4(c) by falsely advising her client that the quitclaim deed was necessary and temporary for the express purpose of obtaining an SBA loan on behalf of her client for repairs to the Algiers double.

The Phillips Matter – Respondent violated Rules 1.1(b), 1.1(c), 1.5(f)(5), 1.16(d), 3.4(a), 3.4(c), 8.1(b), 8.1(c), 8.4(c), and 8.4(d) of the Rules of Professional Conduct. Respondent violated Rules 1.1(b) and 1.1(c) by being ineligible to practice due to her failure to comply with her professional obligations. She violated Rule 1.5(f)(5) by failing to refund any portion of the $1,500 she received from Ms. Phillips as an advanced fee and failing to provide an accounting of the funds, showing what portion, if any, had been earned. She violated Rule 1.16(d) by failing to turn over Ms. Phillips' file to Ms. DeForest. She violated Rule 3.4(a) by purposely not appearing for a sworn statement before the ODC. She violated Rule 3.4(c) by ignoring Ms. DeForest's subpoena requesting the production of Ms.

17

Phillips' file. She violated Rules 8.1(b) and 8.1(c) by failing to appear for a sworn statement, despite being subpoenaed to do so. She violated Rule 8.4(c), which was not alleged in the formal charges, by converting the $1,500 in unearned fees to her own use. Finally, respondent violated Rule 8.4(d) by refusing to produce Ms. Phillips' file in its entirety, even after repeated attempts by Ms. DeForest, including issuing a subpoena duces tecum.

The board then determined that respondent knowingly and intentionally violated duties owed to her clients, the legal system, and the legal profession. She caused significant harm when she disregarded court orders and converted $7,000 to attorney's fees, persuaded her client to sign a quitclaim deed under false pretenses, and failed to return an unearned fee or her client's file. After considering the ABA's *Standards for Imposing Lawyer Sanctions*, the board determined the baseline sanction ranges from a lengthy suspension to disbarment.

In aggravation, the board found a prior disciplinary record (May 2004 diversion), a dishonest or selfish motive, a pattern of misconduct, multiple offenses, bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with the rules or orders of the disciplinary agency, submission of false evidence, false statements, or other deceptive practices during the disciplinary process, refusal to acknowledge the wrongful nature of the conduct, vulnerability of the victim, substantial experience in the practice of law (admitted 1986), and indifference to making restitution. The only mitigating factor found by the board was respondent's personal or emotional problems.

After further considering respondent's misconduct in light of this court's prior jurisprudence addressing similar misconduct, the board recommended that she be suspended from the practice of law for three years. The board further recommended that respondent be ordered to make restitution in all three counts of misconduct. Two board members dissented and would recommend disbarment.

18

The ODC filed an objection to the disciplinary board's recommendation. Accordingly, the case was docketed for oral argument pursuant to Supreme Court Rule XIX, § 11(G)(1)(b). Respondent did not file a brief in advance of oral argument. Further, on the day before the case was set for oral argument, respondent filed a motion for continuance. We denied the motion. Respondent failed to appear for oral argument.

**DISCUSSION**

Bar disciplinary matters fall within the original jurisdiction of this court. La. Const. art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. *In re: Banks*, 09-1212 (La. 10/2/09), 18 So. 3d 57. While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee's factual findings. *See In re: Caulfield*, 96-1401 (La. 11/25/96), 683 So. 2d 714; *In re: Pardue*, 93-2865 (La. 3/11/94), 633 So. 2d 150.

The record of this matter indicates that respondent defied numerous court orders, converted $7,000 in third-party funds to her own use, failed to adequately communicate with a client, engaged in conflicts of interest by (1) entering into a business transaction with a client without advising the client to seek independent counsel and (2) entering into a quitclaim deed transaction with a client without advising the client to seek independent counsel, engaged in deceitful conduct, was ineligible to practice law for failing to fulfill her professional obligations, failed to refund an unearned fee, failed to return a client's file despite numerous requests, and failed to cooperate with the ODC in its investigation. Based on these facts,

19

respondent has violated the Rules of Professional Conduct as alleged in the formal charges.[2]

Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent's actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. *Louisiana State Bar Ass'n v. Reis*, 513 So. 2d 1173 (La. 1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances. *Louisiana State Bar Ass'n v. Whittington*, 459 So. 2d 520 (La. 1984).

We find that respondent knowingly and intentionally violated duties owed to her clients, the legal system, and the legal profession. She caused significant harm by disregarding court orders and converting $7,000 in third-party funds, persuading her client to sign a quitclaim deed under false pretenses, and failing to return an unearned fee or her client's file. The applicable baseline sanction in this matter ranges from a lengthy suspension to disbarment.

The following aggravating factors are supported by the record: a prior disciplinary record, a dishonest or selfish motive, a pattern of misconduct, multiple offenses, bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with the rules or orders of the disciplinary agency, refusal to acknowledge the wrongful nature of the conduct, vulnerability of the victim, substantial experience in the practice of law (admitted 1986), and indifference to making restitution. The record suggests that the mitigating factor of personal or

---

[2] In the Phillips matter, the board found a violation of Rule 8.4(c) for respondent's failure to refund the $1,500 paid to her by Ms. Phillips. However, the ODC did not allege a violation of Rule 8.4(c) in that matter.

emotional problems is present, and respondent's prior discipline was remote in time.

In light of the egregious misconduct at issue in this matter, and considering the numerous aggravating factors present, we conclude respondent should be disbarred. Respondent is ordered to make restitution as follows: 1) in the McDonald matter, respondent shall place $7,000 into the registry of the court where the McDonalds' divorce case was pending; 2) in the Phillips matter, respondent shall make full restitution of $1,500 to Ms. Phillips; and 3) in the White matter, respondent shall restore all of Ms. White's interest in the Algiers double previously quitclaimed to respondent. We caution respondent that if there is any undue delay in her compliance with our restitution order, she will not be considered for readmission.

**DECREE**

Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, the brief filed by the ODC, and oral argument, it is ordered that ReJohnna Brown-Mitchell, Louisiana Bar Roll number 17487, be and she hereby is disbarred. Her name shall be stricken from the roll of attorneys and her license to practice law in the State of Louisiana shall be revoked. It is further ordered that respondent shall make restitution as set forth in this opinion. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.

05/05/15

SUPREME COURT OF LOUISIANA

NO. 2014-B-2544

IN RE: REJOHNNA BROWN-MITCHELL


CRICHTON, J., concurs in part and dissents in part:

While I agree that respondent's conduct warrants serious discipline, I believe ordinary disbarment is unduly lenient. In order to protect the public and maintain the high standards of the legal profession in this state, I would not allow respondent the opportunity to return to the practice of law in the future. Therefore, I would impose permanent disbarment.